ACTION ON SMOKING AND
HEALTH, Appellant,

v.

Patricia Roberts HARRIS, Secretary of
the Department of Health and Human
Services et al.

No. 79–1397.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 13, 1980.

Decided Dec. 19, 1980.

John F. Banzhaf, III, Washington, D. C., with whom Peter N. Georgiades, Pittsburgh, Pa., was on the brief, for appellant.

Margaret Halpern, Atty., U. S. Dept. of Justice, with whom John J. Powers, Atty., U. S. Dept. of Justice, Washington, D. C., Richard M. Cooper, Chief Counsel, Food and Drug Administration, and Joanne S. Sisk, Associate Chief Counsel, Food and Drug Administration, Rockville, Md., were on the brief, for appellees.

Before TAMM, ROBB and MIKVA, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this case the organization Action on Smoking and Health (ASH) challenges the refusal by the Food and Drug Administration (FDA) to assert jurisdiction over cigarettes containing nicotine as a "drug" under section 201(g)(1)(C) of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 321(g)(1)(C) (1976). According the Administration's interpretation proper deference, we do not find this agency action arbitrary, capricious, or contrary to law and therefore affirm the judgment of the district court.

## I. BACKGROUND

On May 26, 1977, Action on Smoking and Health, in conjunction with thirteen other organizations and individuals, filed a citizen petition with the Food and Drug Administration requesting: (1) that the agency assert jurisdiction over cigarettes containing nicotine as a "drug" or a "device"; (2) that the agency regulate cigarettes no less strictly than saccharin; and (3) that the agency restrict the sale of cigarettes to pharmacies.[1] Citizen Petition, *reprinted in* Joint Appendix (J.A.) 1–43. ASH contended that section 201(g)(1)(C) of the Food, Drug, and Cosmetic Act (Act) provided the agency with the requisite jurisdiction over cigarettes as a drug.[2] In a letter memorandum dated December 5, 1977, however, the Commissioner of Food and Drugs, Donald Kennedy, rejected ASH's contention. The Commissioner based his rejection upon the agency's consistent position that cigarettes will not be deemed a drug unless health claims are made by the vendors.[3] The Commissioner noted that he would respond to ASH's request that the FDA assert jurisdiction over cigarettes as a device in connection with ASH's planned separate petition.[4]

Subsequent to the denial of its requests, ASH filed an action in the United States District Court for the District of Columbia on March 1, 1978, challenging the Commissioner's action. On cross-motions for summary judgment, the Honorable John H. Pratt granted defendants' motion and dismissed the case. *Action on Smoking and Health (ASH) v. Califano*, Civ. No. 78–338 (D.D.C. Jan. 16, 1979), *reprinted in* J.A. 285–90. Plaintiffs filed a timely appeal.

## II. DISCUSSION

### A. *Standard of Review of the Commissioner's Action*

ASH contends that cigarettes containing nicotine fall within the jurisdiction of the FDA as a matter of law under section 201(g)(1) of the Food, Drug, and Cosmetic Act, which states in relevant part as follows: "The term 'drug' means . . . (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals . . . ." 21 U.S.C. § 321(g)(1)(C) (1976). In evaluating the Commissioner's disagreement with this contention, ASH would have this court substitute its judgment for that of the Commissioner, approaching the question of statutory interpretation de novo. We do not believe that such an approach is warranted in this case.

On the contrary, the construction and application of a statute by those charged with its administration is entitled to substantial deference. *United States v. Rutherford,*

---

1. Petitioners supplemented their requests at a meeting with the Commissioner of Food and Drugs and in a subsequent memorandum. In this memorandum dated November 15, 1977, *reprinted in* Joint Appendix (J.A.) 80–102, petitioners withdrew their request that the Commissioner regulate cigarettes no less strictly than saccharin as a result of congressional postponement of administrative regulation of saccharin. Supplemental Memorandum at 2, J.A. 81.

2. This statutory provision states in pertinent part:

    The term "drug" means . . . (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals . . . .
    21 U.S.C. § 321(g)(1)(C) (1976).

3. *See* note 7 *infra.*

4. After the Commissioner's failure to render a final decision upon ASH's subsequent petitions requesting FDA regulation of both cigarettes and cigarette filters as "medical devices," ASH sought relief from the courts. By order filed August 12, 1980, the Honorable Louis F Oberdorfer of the District Court for the District of Columbia granted ASH's motion for summary judgment and ordered the agency to submit a schedule for completion of final action on ASH's petitions. *Action on Smoking and Health (ASH) v. United States Food and Drug Administration*, Civ. No. 79–2989 (D.D.C. Aug. 12, 1980). Pursuant to court order the agency announced its intention to issue a final response no later than December 1, 1980. Letter from Joseph P. Hile, Associate Commissioner for Regulatory Affairs, Food and Drug Administration, *ASH v. United States Food and Drug Administration*, Civ. No. 79–2989 (D.D.C. Sept. 12, 1980). We intimate no opinion on the question of FDA jurisdiction over cigarettes or cigarette filters as "medical devices."

442 U.S. 544, 553, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 662 (1965). *See Federation of Homemakers v. Schmidt*, 539 F.2d 740, 743 (D.C.Cir.1976). This court has noted two basic rationales justifying a deferential regard for administrative interpretation of statutes: administrative expertise and congressional acquiescence in the administrative interpretation. *Wilderness Society v. Morton*, 479 F.2d 842, 866 (D.C.Cir.) (en banc), *cert. denied*, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973). We believe that the latter basis is relevant to the consideration of the administrative interpretation at issue here and agree with the district court, *ASH v. Califano*, Civ. No. 78–338 (D.D.C. Jan. 16, 1979), memorandum op. at 3, *reprinted in* J.A. 287, that a deferential approach is mandated.[5] *United States v. Rutherford*, 442 U.S. 544, 554 n.10, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979).

## B. *Legislative History*

The statutory provision in question here has not been modified since its enactment in 1938. Food, Drug, and Cosmetic Act, ch. 675, § 201, 52 Stat. 1040 (1938). Under prior law, the Federal Food and Drug Act of 1906, "drug" had been defined as follows:

all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease in man or other animals.

Federal Food and Drug Act, ch. 3915, 34 Stat. 768 (1906). The limited scope of this definition made it difficult to control such substances as cosmetics, mechanical devices, and fraudulent remedies for obesity. Weitzman, *Drug, Device, Cosmetic?—Part I*, 24 Food Drug Cosm.L.J. 226, 230 n.20 (1969).

Consequently, a legislative effort to secure better protection of the public health began in June of 1933 with the introduction of S. 1944. S.Rep.No.152, 75th Cong., 1st

Sess. 2 (1937). Superseding this bill was S. 2800 on which a week of public hearings was held in early 1934. *Foods, Drugs, and Cosmetics: Hearings on S. 2800 Before the Senate Comm. on Commerce*, 73d Cong., 2d Sess. (1934). These bills contained expanded definitions of drugs. Such expansion, according to W. G. Campbell, Chief of the Food and Drug Administration at that time, would enable the FDA to assert jurisdiction over slenderizing remedies and other harmful products. *Id.* at 516 (statement of W. G. Campbell). In cases in which FDA jurisdiction was not clearly appropriate, he emphasized, the Administration's jurisdictional analysis would focus upon the existence of representations made by the manufacturer. Thus, as Mr. Campbell explained to one Senator, a chiropractor's table would not be a drug under the Act unless the manufacturer "were to ship that table into interstate commerce, and say that that table would cure various ills." *Id.* at 517. This concept was further developed in the following exchange between Mr. Campbell and Senator Copeland, the sponsor of the bill:

Senator COPELAND. This is true, too, is it not, Mr. Campbell, that if such devices were shipped without advertising to a legitimate practitioner, and if he chose in his practice, legalized as he is under the law, to use that device, that is his privilege.

Mr. CAMPBELL. Quite right. There is no interference at all with the manufacture, with the marketing, with the use of such product. This is only when someone goes to the extreme of converting that thing into a drug, according to this definition, and making preposterous and ridiculous representations about it that there would be any jurisdiction under this law, and I cannot conceive of that occurrence.

*Id.* at 518.

These comments reveal the understanding even in 1934 that the crux of FDA jurisdiction over drugs lay in manufacturers' representations *as revelatory of their*

---

5. *See* pages 11–15 *infra.*

intent.[6]  *See also* S.Rep.No.361, 74th Cong., 1st Sess. 4 (1935) ("The manufacturer of the article, through his representations in connection with its sale, can determine the use to which the article is to be put.").  Such an understanding has now been accepted as a matter of statutory interpretation.  As the Second Circuit has noted, "[t]he vendors' intent in selling the product to the public is the key element in this statutory definition."  *National Nutritional Foods Association v. Mathews*, 557 F.2d 325, 333 (2d Cir. 1977).

### C.  *The Commissioner's Interpretation*

Donald Kennedy, Commissioner of Food and Drugs, denied ASH's request that the FDA assert jurisdiction over cigarettes as a drug in a letter memorandum dated December 5, 1977.  J.A. 139–42.  The Commissioner pointed out initially that FDA jurisdiction could not be predicated upon either evidence of a serious health hazard or the clear absence of authority in any other federal agency to regulate cigarettes.  Rather, consistent with the agency's focus upon manufacturers' representations, the FDA has asserted jurisdiction over cigarettes only when health claims were made by the vendors or manufacturers.[7]  Absent such claims, the Commissioner stated, cigarettes are not a drug within the meaning of the Act.  In answering ASH's contention that cigarettes fall squarely within the statutory definition, the Commissioner stated as follows:

> The petitioners have presented no evidence that manufacturers or vendors of cigarettes represent that the cigarettes are "intended to affect the structure or any function of the body of man..." 21 U.S.C. § 321(g)(1)(C).  Statements by the petitioners and citations in the petition that cigarettes are used by smokers to affect the structure or any functions of their bodies are not evidence of such intent by the manufacturers or vendors of cigarettes, as required under the provisions of 21 U.S.C. § 321(g)(1)(C) ....

J.A. 142.

Unlike petitioners, we do not read these statements to mean either that the Commissioner will never consider evidence of consumer intent on this question or that he simply ignored the evidence presented to him in this petition.  Rather, by failing to introduce any evidence of vendors' intent— whether based upon subjective vendor claims or objective evidence such as labeling, promotional material, and advertising—ASH placed itself in the position of having to meet the high standard established in cases where the statutory "intent" is derived from consumer use alone.  Clearly, it is well established "that the 'intended use' of a product, within the meaning of the Act, is determined from its label, accompanying labeling, promotional claims, advertising, and any other relevant source."  *Hanson v. United States*, 417 F.Supp. 30, 35 (D.Minn.), *aff'd*, 540 F.2d 947 (8th Cir. 1976).  Whether evidence of consumer intent is a "relevant source" for these purposes depends upon whether such evidence is strong enough to justify an inference as to the vendors' intent.  This requires a substantial showing.  As Judge Friendly has stated in an analogous situation involving the requisite intent under section 201(g)(1)(B) of the Act:

> While we agree that a factfinder should be free to pierce all of a manufacturer's subjective claims of intent and even his misleadingly "nutritional" labels to find actual therapeutic intent on the basis of objective evidence in a proper case, such objective evidence would need to consist of something more than demonstrated uselessness as a food for most people.

---

**6.**  Such an approach continued after the passage of the Act.  See the Trade Correspondence of 1940 issued by the Administration quoted in Erlebacher, *When Is a "Cosmetic" Also a "Drug" Under the Federal Food, Drug and Cosmetic Act*, 27 Food Drug Cosm.L.J. 740, 759–60 (1972).  *See also* Adams, *Cosmetic or Drug?*, 35 Food Drug Cosm.L.J. 98, 102 (1980).

**7.**  The Commissioner cited as support for this proposition both *United States v. 46 Cartons, More or Less, Containing Fairfax Cigarettes*, 113 F.Supp. 336 (D.N.J.1953), and *United States v. 354 Bulk Cartons * * * Trim Reducing-Aid Cigarettes*, 178 F.Supp. 847 (D.N.J. 1959), in which cases the courts upheld the assertion of jurisdiction by the Administration.

*National Nutritional Foods Association v. Food & Drug Administration,* 504 F.2d 761, 789 (2d Cir. 1974) (high-dosage vitamin products not per se therapeutic), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975).

In cases such as the one at hand, consumers must use the product predominantly—and in fact nearly exclusively—with the appropriate intent before the requisite statutory intent can be inferred. In similar cases involving the determinative intent under section 201(g)(1)(B) of the Act, for example, "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease . . . ," courts have accorded limited discretion to the Administration in its attempt to establish the requisite intent based primarily upon consumer use. *See National Nutritional Foods Association v. Mathews,* 557 F.2d 325, 334–36 (2d Cir. 1977); *Millet, Pit & Seed Co. v. United States,* 436 F.Supp. 84, 89 n.4 (E.D.Tenn. 1977), *vacated on other grounds,* 627 F.2d 1093 (6th Cir. 1980). ASH did not establish, and arguably cannot establish, the near-exclusivity of consumer use of cigarettes with the intent "to affect the structure or any function of the body of man . . . ." The Commissioner's determination, that this is not the proper case in which some evidence of consumer use, even if demonstrating the appropriate intent, may suffice to establish the requisite statutory intent, was thus neither arbitrary nor capricious.

ASH argues that cigarettes fit within the plain language of the statutory definition and that *United States v. Bacto-Unidisk,* 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969), thereby mandates the assertion of jurisdiction by the FDA in this case. We do not agree that such a result is dictated by *Bacto-Unidisk.* There the Court held that a laboratory aid known as an antibiotic sensitivity disc was a drug within the meaning of section 201(g)(1)(B) of the Act. In interpreting the relevant phraseology, the Court found "that Congress fully intended that the Act's coverage be as broad as its literal language indicates—and equally clearly, broader than any strict medical definition might otherwise allow." *Id.* at 798. Al-

though we agree that Congress defined a drug more broadly than would a medical definition, the Court was not focusing upon the language of section 201(g)(1)(C) when it made this observation. Rather, the court's remarks in *Federal Trade Commission v. Liggett & Myers Tobacco Co.,* 108 F.Supp. 573 (S.D.N.Y.1952), *aff'd,* 203 F.2d 955 (2d Cir. 1953), seem as relevant today as they were in 1952:

> Anything which stimulates any of the senses may be said, in some perhaps insignificant degree, to affect the functions of the body of man. Consequently any article which, used in the manner anticipated by the manufacturer thereof, comes into contact with any of the senses may be said to be an article "intended to affect the functions of the body of man" . . . .
>
> Surely, the legislators did not mean to be as all-inclusive as a literal interpretation of this clause would compel us to be.

*Id.* at 576 (footnote omitted) (construing identical language in the Federal Trade Commission Act).

The Administration has also recognized implicit limitations upon the scope of the statutory definition at issue here. In testimony before the Senate, a representative of the Office of the General Counsel, Department of Health, Education, and Welfare, commented on the application of this statutory provision to protective chemical sprays such as "mace." He disagreed with a previous witness on

> whether or not these products could be classified as drugs. We concluded that they could not. They come properly under the Hazardous Substances Act and are not drugs.
>
> I suppose that pistols and bullets are intended to affect the function or structure of the body in the same way these are, but we concluded that the products could not properly be classified as drugs under the definition in the Food, Drug, and Cosmetic Act.

*Public Sale of Protective Chemical Sprays: Hearings Before the Consumer Subcomm. of the Senate Comm. on Commerce,* 91st

Cong., 1st Sess. 37 (1969) (statement of William Goodrich).

The Commissioner demonstrated in his denial letter his awareness of the limitations implicit in the statutory definition of a drug, of case law denying the Federal Trade Commission jurisdiction over cigarettes, and of his own Administration's long-standing interpretation of the scope of its jurisdiction over cigarettes. The Commissioner's restatement of that interpretation cannot be found contrary to law.

### D. Congressional Acquiescence.

Congress has been made repeatedly aware that the FDA cannot assert jurisdiction over cigarettes absent health claims made by manufacturers or vendors. *False and Misleading Advertising (Filter-Tip Cigarettes): Hearings Before a Subcomm. of the House Comm. on Government Operations*, 85th Cong., 1st Sess. 285 (1957) (statement of Robert Secrest); *Cigarette Labeling and Advertising: Hearings Before the House Comm. on Interstate and Foreign Commerce*, 88th Cong., 2d Sess. 125 (1964) (statement of Paul R. Dixon); *Cigarette Labeling and Advertising: Hearings Before the House Comm. on Interstate and Foreign Commerce*, 89th Cong., 1st Sess. 193 (1965) (statement of Mr. Rankin). As recently as 1972, for example, Dr. Charles C. Edwards, FDA Commissioner, reiterated the Administration's adherence to this position in testimony before a Senate subcommittee:

> Cigarettes and other tobacco products would be drugs subject to the Federal Food, Drug, and Cosmetic Act if medical claims are made for the product....
>
> However, cigarettes recommended for smoking pleasure are beyond the Federal Food, Drug, and Cosmetic Act. In *Federal Trade Commission v. Liggett and Myers Tobacco Company* (108 F.Supp.

573, 1952), it was held that cigarettes are not drugs within the meaning of the act unless a therapeutic purpose is claimed.

> Indeed, if cigarettes were to be classified as drugs, they would have to be removed from the market because it would be impossible to prove they were safe for their intended us [sic].

*Public Health Cigarette Amendments of 1971: Hearings Before the Consumer Subcomm. of the Senate Comm. on Commerce*, 92d Cong., 2d Sess. 239 (1972) (statement of Dr. Charles C. Edwards). The Commissioner also submitted for the record an intra-agency memorandum dated May 24, 1963, setting forth the FDA position that cigarettes did not fall within either the Food, Drug, and Cosmetic Act or the Hazardous Substances Labeling Act. *Id.* at 240. The Commissioner stated his opinion that "labeling or banning cigarettes is a step that can be take [sic] only by the Congress. Any such move by FDA would be inconsistent with the clear congressional intent." *Id.* at 242.[8]

Action taken by Congress in an analogous situation is instructive. As noted above, the FDA took the position that cigarettes did not fall within the scope of its jurisdiction under the Federal Hazardous Substances Act. Subsequently, Congress transferred FDA jurisdiction and authority under this Act to the Consumer Product Safety Commission. 15 U.S.C. § 2079(a) (1976). In 1974 the Commission denied a petition requesting it to assert jurisdiction over "high tar" cigarettes; the sponsors of this petition, including the American Public Health Association, thereupon filed suit against the Commission. The District Court of the District of Columbia held that the Commission possessed jurisdiction over these cigarettes. *American Public Health Association v. Consumer Product Safety*

---

**8.** Legislators interested in regulating cigarettes received a similar response from the FDA when approaching the Administration on an individual basis.

> Two years ago, I went to the Commissioner of the FDA and asked him and he turned me down. He said that this did not affect tobacco. It is neither a food nor a drug. I had decided according to my interpretation it would, but I did request their interpretation and I was turned down. *So I figured from that additional legislation was needed.*

*Cigarette Labeling and Advertising: Hearings Before the Senate Comm. on Commerce*, 89th Cong., 1st Sess. 52 (1965) (statement of Sen. Neuberger) (emphasis added).

242

*Commission*, C.A. No. 74–1222 (D.D.C. April 23, 1975), *vacated as moot*, No. 75–1863 (D.C.Cir. June 15, 1976).

Congressional reaction to this holding was swift. On June 24, 1975, the Senate Commerce Committee and the House Committee on Interstate and Foreign Commerce reported bills that eliminated Commission jurisdiction over cigarettes under the Hazardous Substances Act, S.Rep.No.251, 94th Cong., 1st Sess. (1975); H.R.Rep.No.325, 94th Cong., 1st Sess. (1975), U.S.Code Cong. & Admin.News 1976, 993 and on May 11, 1976, the Consumer Product Safety Commission Improvements Act became law. Pub.L.No.94–284, 90 Stat. 503 (1976). Although we need not address in this opinion the issue of congressional preemption of the field of cigarette smoking,[9] this prompt congressional action serves at least to illustrate the wisdom of judicial deference to administrative interpretations of statutes that have been consistently communicated to the legislative branch. *Wilderness Society v. Morton*, 479 F.2d 842, 866 (D.C.Cir.) (en banc), *cert. denied*, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973). *See also Power Reactor Development Co. v. Int'l Union of Electrical, Radio & Machine Workers*, 367 U.S. 396, 408–09, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961); *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1161–62 (D.C.Cir.1975) (continuing congressional interest in legislative subject-matter makes judicial deference more appropriate).

. ASH contends, however, that the FDA's consistent position merits no deference as it is nothing more than blind adherence to the "ill-reasoned, outmoded and only tangentially relevant decision" in *Federal Trade Commission v. Liggett & Myers Tobacco Co.*, 108 F.Supp. 573 (S.D.N.Y.1952), aff'd, 203 F.2d 955 (2d Cir. 1953). Brief for Appellant at 43. Were the Commissioner and the Administration as a whole to ignore clearly relevant judicial decisions, however, they would not be performing their statutory duty. Furthermore, even had the various officials from the Administration and Federal Trade Commission relied solely upon this decision in the testimony repeatedly placed before committees of the House and Senate, such reliance would not affect the extent of congressional knowledge of the agency interpretation, and thereby the deference due it from this court.[10]

Moreover, this is not a case in which " 'the administrator's legal decision is based on his interpretation of a judicial opinion that in turn construes a statute.' " *H. W. Wilson Co. v. United States Postal Service*, 580 F.2d 33, 37 (2d Cir. 1978), quoting *Institute for Scientific Information v. United States Postal Service*, 555 F.2d 128, 132 (3d Cir. 1977). The Commissioner noted that the court in *Liggett & Myers* was construing the Federal Trade Commission Act, not the Food, Drug, and Cosmetic Act, even though the definitions in the two acts are identical. The Commissioner's refusal to assert jurisdiction over cigarettes was clearly not predicated solely upon his interpretation of either one or a combination of judicial decisions. Rather, the five judicial decisions cited in the letter of denial served

9. *Compare* the 1974 opinion of the Comptroller General that by enacting special legislation Congress intended to "preempt the field of cigarette smoking and its relation to health," 120 Cong.Rec. 11615–16 (April 24, 1974) (letter from Elmer B. Staats, Comptroller General, to Sen. Sam J. Ervin, Jr.) *with American Public Health Association v. Consumer Product Safety Commission*, C.A. No. 74–1222 (D.D.C. April 23, 1975), memorandum op. at 8.

10. Nothing in this opinion should suggest that the Administration is irrevocably bound by any long-standing interpretation and representations thereof to the legislative branch. An administrative agency is clearly free to revise its interpretations. *See Int'l Union, United Auto.,*

*Aero. & Agric. Implement Workers of America (UAW) v. NLRB*, 459 F.2d 1329, 1341 (D.C.Cir. 1972). The very structure of the Act which the FDA must administer, moreover, calls for case-by-case analysis. Should an agency depart from its prior interpretations, however, it must provide a reasoned explanation for its action. *See The Baltimore and Annapolis Railroad Co. v. Washington Metropolitan Area Transit Commission (WMATC)*, 642 F.2d 1365, 1369–1370 (D.C.Cir.1980). Furthermore, the interpretation at issue here denies the existence of FDA jurisdiction over *all* cigarettes, not particular brands, *see* note 7 *supra*, or particular parts of a cigarette, *see* note 4 *supra*.

both to support the Commissioner's restatement of a consistent agency interpretation and to illustrate several facets of the reasoning employed in that restatement.

## III. CONCLUSION

We agree with the district court that "[u]nderlying this interpretation, of course, is the agency's own perception of congressional intent with regard to the regulation of cigarettes." *ASH v. Califano*, Civ. No. 78–338 (D.D.C. Jan. 16, 1979), memorandum op. at 4, *reprinted in* J.A. 288. This perception has been consistently communicated to the legislative branch. We cannot find such an interpretation to be arbitrary or capricious in light of the consistent administrative and judicial emphasis upon manufacturer and vendor intent as the cornerstone of the statutory provision at issue here. If the statute requires expansion, that is the job of Congress. The decision of the district court is

*Affirmed.*