Opinion for the Court filed by Senior Circuit Judge WILLIAMS.
Opinion concurring in the judgment filed by Circuit Judge GARLAND.
WILLIAMS, Senior Circuit Judge:
Sottera, Inc., which does business as NJOY, is an importer and distributor of “electronic cigarettes” or “e-cigarettes,” a product that enables users to inhale vaporized nicotine. The question before us is whether Congress has authorized the Food and Drug Administration (“FDA”) to regulate e-cigarettes under the drug/device provisions of the Federal Food, Drug, and Cosmetic Act (“FDCA”), 21 U.S.C. § 351 et seq., or under the Family Smoking Prevention and Tobacco Control Act of 2009 (the “Tobacco Act”), Pub.L. 111-31, 123 Stat. 1776. We think that the statutes, properly read in light of the Supreme Court’s decision in FDA v. Brown & Williamson, 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), locate the product under the Tobacco Act.
*893 Electronic cigarettes are battery-powered products that allow users to inhale nicotine vapor without fire, smoke, ash, or carbon monoxide. NJOY Compl. at 2. Designed to look like a traditional cigarette, each e-cigarette consists of three parts: the nicotine cartridge, the atomizer or heating element, and the battery and electronics. The plastic cartridge serves as the mouthpiece and contains liquid nicotine, water, propylene glycol, and glycerol. Id. at 5. The atomizer vaporizes the liquid nicotine, and the battery and electronics power the atomizer and monitor air flow. Id. When the user inhales, the electronics detect the air flow and activate the atomizer; the liquid nicotine is vaporized, and the user inhales the vapor. Id.
NJOY has imported and distributed e-cigarettes since 2007. Id. at 2, 4. The liquid nicotine in each e-cigarette is derived from natural tobacco plants, Decl. of John Leadbeater at 2, and NJOY claims that its product is marketed and labeled for “smoking pleasure,” rather than as a therapeutic or smoking cessation product. NJOY Compl. at 2; Decl. of John Lead-beater at 2. On April 15, 2009 the FDA ordered that a shipment of NJOY’s e-cigarettes be denied entry into the United States, asserting that the e-cigarettes appeared to be adulterated, misbranded, or unapproved drug-device combinations under the FDCA. April 20, 2009 Notice of FDA Action.
Also in April 2009, another importer and distributor of e-cigarettes, Smoking Everywhere, Inc., sought a preliminary injunction barring the FDA and various officials from denying their products entry into the United States and from regulating e-cigarettes under the drug/device provisions of the FDCA. Smoking Everywhere Compl. at 1-2, 7. NJOY joined as an intervenorplaintiff and filed its own complaint and request for a preliminary injunction. NJOY Compl. at 3; Mem. Op. at 7.
Smoking Everywhere and NJOY argued that the FDA can regulate electronic cigarettes, as they propose to market them, only under the Tobacco Act, claiming that the Supreme Court’s opinion in Brown & Williamson foreclosed FDCA drug/device jurisdiction over tobacco products marketed without claims of therapeutic effect. The district court agreed and granted the injunction. Wfliile this appeal was pending, Smoking Everywhere voluntarily dismissed its complaint against the FDA, leaving NJOY as the sole appellee. See NJOY Br. at 4.
When deciding whether to grant a preliminary injunction, a district court must consider four familiar factors: whether “(1) the plaintiff has a substantial likelihood of success on the merits; (2) the plaintiff would suffer irreparable injury were an injunction not granted; (3) an injunction would substantially injure other interested parties; and (4) the grant of an injunction would further the public interest.” Ark. Dairy Coop. Ass’n, Inc. v. U.S. Dep’t of Agric., 573 F.3d 815, 821 (D.C.Cir.2009) (citing Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C.Cir.1998)). We review the district court’s weighing of these factors under an abuse of discretion standard, but review questions of law de novo. Id.; see also Davis v. Pension Benefit Guaranty Corp., 571 F.3d 1288, 1291 (D.C.Cir.2009).
Under the FDCA, the FDA has authority to regulate articles that are “drugs,” “devices,” or drug/device combinations. 21 U.S.C. § 321(g)(1) defines drugs to include
(B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than *894 food) intended to affect the structure or any function of the body of man or other animals.
21 U.S.C. § 321(g)(1)(B) & (C). The statute defines devices similarly, see 21 U.S.C. § 321(h)(2) & (3); products that are “combination[s] of a drug, device, or biological product” are regulated as combination products, see 21 U.S.C. § 353(g)(1).
Until 1996, the FDA had never attempted to regulate tobacco products under the FDCA (with one exception, irrelevant for reasons discussed below) unless they were sold for therapeutic uses, that is, for use in the “diagnosis, cure, mitigation, treatment, or prevention of disease” under § 321(g)(1)(B). Cf. Action on Smoking and Health v. Harris, 655 F.2d 236 (D.C.Cir.1980). But in that year, the FDA changed its long-held position, promulgating regulations affecting tobacco products as customarily marketed, i.e., ones sold without therapeutic claims. See Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents, 61 Fed.Reg. 44,396 (Aug. 28, 1996). The agency asserted that nicotine is a drug that affects the structure or function of the body under § 321(g)(1)(C) and that cigarettes and smokeless tobacco were therefore drug/device combinations falling under the FDA’s regulatory purview, even absent therapeutic claims. See 61 Fed.Reg. at 44,397, 44,400.
In FDA v. Brown & Williamson, the Supreme Court rejected the FDA’s claimed FDCA authority to regulate tobacco products as customarily marketed. Looking to the FDCA’s “overall regulatory scheme,” the “tobacco-specific legislation” enacted since the FDCA, and the FDA’s own frequently asserted position, it held that Congress had “ratified ... the FDA’s plain and resolute position that the FDCA gives the agency no authority to regulate tobacco products as customarily marketed.” 529 U.S. at 126, 159, 120 S.Ct. 1291.
To fill the regulatory gap identified in Brown & Williamson, Congress in 2009 passed the Tobacco Act, Pub.L. No. 111—31, 123 Stat. 1776, 21 U.S.C. §§ 387 et seq., providing the FDA with authority to regulate tobacco products. The act defines tobacco products so as to include all consumption products derived from tobacco except articles that qualify as drugs, devices, or drug-device combinations under the FDCA:
(rr)(l) The term “tobacco product” means any product made or derived from tobacco that is intended for human consumption, including any component, part, or accessory of a tobacco product
(2) The term “tobacco product” does not mean an article that is a drug under [the FDCA’s drug provision], a device under [the FDCA’s device provision], or a combination product described in [the FDCA’s combination product provision],
21 U.S.C. § 321(rr).
The Tobacco Act itself states that it does not “affect, expand, or limit” the FDA’s jurisdiction to regulate products under the drug/device provisions of the FDCA, 21 U.S.C. § 387a(c)(1), and the district court and parties themselves appear to agree that the Tobacco Act did not expand the category of drugs, devices, and combination products subject to FDCA jurisdiction in the wake of Brown & Williamson. See Mem. Op. 9 n. 4. The question before us, therefore, is whether the FDA can regulate electronic cigarettes under the FDCA’s drug/device provisions or whether it can regulate them only under the Tobacco Act’s provisions.
The FDA at one point argues that its decision to regulate electronic cigarettes under the FDCA’s drug/device provisions *895 is entitled to Chevron deference. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). FDA Br. at 20. But in fact the case does not turn on matters of statutory interpretation. Rather, as the FDA itself argues, the Tobacco Act did not alter the FDA’s authority under the FDCA. FDA Br. at 19; FDA Reply Br. at 21. And with respect to tobacco products, the breadth of that authority is governed by the Supreme Court’s decision in Brown & Williamson. We therefore turn to that case.
In Brown & Williamson the Supreme Court addressed the FDA’s regulation of cigarettes and smokeless tobacco products under the FDCA. It began by noting that the FDCA seeks to ensure that the FDA will approve products only if they are safe and effective for their intended use. 529 U.S. at 133, 120 S.Ct. 1291. Yet the FDA had itself found that tobacco products are “unsafe,” “dangerous,” and “cause great pain and suffering from illness.” Id. at 134, 120 S.Ct. 1291 (quoting 61 Fed.Reg. 44,412). If tobacco products were drug/device combinations under the FDCA, the FDA would have no choice but to ban them. Id. at 135, 120 S.Ct. 1291.
Clearly that could not be the case, the Court reasoned. After all, Congress had declared, in a provision of the U.S. Code then in force, that tobacco was “one of the greatest basic industries of the United States,” id. at 137, 120 S.Ct. 1291 (quoting 7 U.S.C. § 1311(a)), and it had also passed six separate statutes relating to tobacco since 1965. Id. at 137-38, 120 S.Ct. 1291. See Federal Cigarette Labeling and Advertising Act, Pub.L. 89-92, 79 Stat. 282; Public Health Cigarette Smoking Act of 1969, Pub.L. 91-222, 84 Stat. 87; Alcohol and Drug Abuse Amendments of 1983, Pub.L. 98-24, 97 Stat. 175; Comprehensive Smoking Education Act, Pub.L. 98-474, 98 Stat. 2200; Comprehensive Smokeless Tobacco Health Education Act of 1986, Pub.L. 99-252, 100 Stat. 30; Alcohol, Drug Abuse, and Mental Health Administration Reorganization Act, Pub.L. 102-321, § 202, 106 Stat. 394. Finally, citing its decision in MCI Telecommunications Corp. v. AT & T Co., 512 U.S. 218, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994), the Court noted that “Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion.” Brown & Williamson, 529 U.S. at 160, 120 S.Ct. 1291. So the Court held that the FDA’s claim of FDCA jurisdiction failed.
For our purposes, the central question is whether Brown & Williamson’s reading of the FDA’s authority under the drug/device provisions of the FDCA applies only to tobacco products for which Congress has passed specific regulatory statutes or whether it extends to all tobacco products as customarily marketed. The FDA argues that Brown & Williamson takes a statute-specific approach, excluding the FDA from regulating only those tobacco products that at the time of Brown & Williamson had been the subject of specific federal legislation. FDA Br. at 14. Though Brown & Williamson is not crystal clear, we think the better reading is that the FDA lacks FDCA drug/device authority to regulate all tobacco products marketed without claims of therapeutic effect, i.e., as customarily marketed.
Brown & Williamson’s focus was not on the particular products that the six statutes cover or even on the six statutes themselves; at no point did it quote the precise language in which the six statutes identified covered products. Rather, Brown & Williamson considered the context of each statute to show that Congress was actively thinking about “the tobacco *896 problem.” 529 U.S. at 145, 120 S.Ct. 1291. In situating the statutes, Bmm & Williamson found that “[i]n adopting each statute, Congress has acted against the backdrop of the FDA’s consistent and repeated statements that it lacked authority under the FDCA to regulate tobacco absent claims of therapeutic benefit by the manufacturer.” Id. at 144, 120 S.Ct. 1291.
Brown & Williamson concentrated overwhelmingly on the unifying theme of historic FDA policy towards tobacco products — -a policy that it saw as undifferentiated except with regard to the presence or absence of claims of therapeutic effect. See, e.g., id. at 145, 120 S.Ct. 1291 (“Tobacco marketed for chewing or smoking without accompanying therapeutic claims, does not meet the definitions in the Food, Drug, and Cosmetic Act ...” (citing Letter to Directors of Bureaus, Divisions and Directors of Districts from FDA Bureau of Enforcement (May 24, 1963))); id. at 146, 120 S.Ct. 1291 (“In the 73 years since the enactment of the original Food and Drug Act, and in the 41 years since the promulgation of the modern Food, Drug, and Cosmetic Act, the FDA has repeatedly informed Congress that cigarettes are beyond the scope of the statute absent health claims establishing a therapeutic intent on behalf of the manufacturer or vendor” (citing Brief for Appellee (FDA) in Action on Smoking and Health v. Harris, 655 F.2d 236 (D.C.Cir.1980))); id. at 146, 120 S.Ct. 1291 (noting that the FDA’s predecessor agency, the Bureau of Chemistry, stated it lacked authority to regulate tobacco products absent therapeutic claims); id. at 155, 120 S.Ct. 1291 (quoting the FDA’s General Counsel as defining regulatory scope over tobacco products based on therapeutic purpose); id. at 158, 120 S.Ct. 1291 (citing the FDA Deputy Commissioner stating that FDA’s jurisdiction was limited to tobacco products bearing “drug claims”); id. at 158, 120 S.Ct. 1291 (citing the Commissioner of the FDA stating that FDA’s jurisdiction was limited to tobacco products bearing “health claims”).
Moreover, discussing the record before Congress in the period when it passed these six statutes, Brown & Williamson noted that Congress knew of both “the adverse health consequences of tobacco use” and of “nicotine’s pharmacological effects.” Id. at 138, 120 S.Ct. 1291. Nonetheless, Congress “considered and rejected bills that would have granted the FDA” jurisdiction over tobacco products. Id. at 144, 120 S.Ct. 1291.
In this light, Brown & Williamson interprets the six statutes not as a particular carve-out from the FDCA for cigarettes and smokeless tobacco (plus any additional products covered in the six statutes, which the FDA briefs make no effort to itemize), but rather as “a distinct regulatory scheme to address the problem of tobacco and health” — one that Congress intended would “preclude! ] any role for the FDA” with respect to “tobacco absent claims of therapeutic benefit by the manufacturer.” Id. In doing so, Congress also “persistently acted to preclude a meaningful role for any administrative agency in making policy on the subject of tobacco and health.” Id. at 156, 120 S.Ct. 1291. As customarily marketed, tobacco products were to remain the province of Congress.
Reflecting on the history and structure of tobacco regulation, Brown & Williamson concluded,
Congress has affirmatively acted to address the issue of tobacco and health, relying on the representations of the FDA that it had no authority to regulate tobacco. It has created a distinct scheme to regulate the sale of tobacco products, focused on labeling and advertising, and premised on the belief that the FDA lacks such jurisdiction under *897 the FDCA. As a result, Congress’ tobacco-specific statutes preclude the FDA from regulating tobacco products as customarily marketed.
Id. at 156, 120 S.Ct. 1291.
Brovm & Williamson therefore did not preclude the FDA from regulating only those products for which Congress had passed specific statutes. Rather, it recognized that Congress had consciously developed a statutory scheme for tobacco and health that distinguished tobacco products as customarily marketed from ones marketed for therapeutic purposes. “Thus, what Congress ratified was the FDA’s plain and resolute position that the FDCA gives the agency no authority to regulate tobacco products as customarily marketed.” Id. at 159, 120 S.Ct. 1291.
At oral argument the FDA observed with some justice that the regulatory scheme before the Court in Brovm & Williamson addressed only cigarettes and smokeless tobacco; it would have us infer that the Court used the incessantly repeated phrase “tobacco products” as a shorthand, confined to the products before the Court (supplemented by whatever additional products were reached by the six statutes). We find no evidence of any such restrictive intent; certainly the Court did not use the familiar economizing form: “cigarettes and smokeless tobacco (‘tobacco products’).”
The Tobacco Act is wholly consistent with this reading of Brovm & Williamson. Written to address the regulatory gap that the case identified, the Tobacco Act provides the FDA with regulatory authority over tobacco products without requiring therapeutic claims. Besides leaving the FDA’s authority under the drug/device provisions of the FDCA undisturbed, see 21 U.S.C. § 321(rr)(2) & § 387a(c)(1), the act broadly defines tobacco products as extending to “any product made or derived from tobacco,” 21 U.S.C. § 321(rr)(1) (emphasis added). To be sure, this definition could align with a variety of interpretations of Brovm & Williamson’s scope (including the one FDA proffers here), but our reading is squarely within that range.
The FDA responds that its treatment of the Favor Smokeless Cigarette in 1987 supports its reading of Brovm & Williamson. FDA Br. at 14-15. We think not. Favor was a small tube containing a nicotine solution, enabling the user to inhale nicotine vapor without smoke. Id. at 14. Though the Smokeless Cigarette was marketed without therapeutic claims, the FDA warned Favor that it was an unapproved new drug. Id. at 14-15. The FDA’s claimed authority over Favor was, however, never challenged or adjudicated in court. Nor did Brovm & Williamson address the Smokeless Cigarette, perhaps because neither side brought it before the Court (perhaps in turn because the individuals litigating the case were unaware of it). In its argument in Brovm & Williamson, the FDA stated that “the only instances in which the agency had found that tobacco products were drugs involved cases in which there were express market claims of therapeutic value.” Pet’rs’ Br., FDA v. Brown & Williamson, 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (No. 98-1152), 1999 WL 503874 at *37 (emphasis added). In fact, one of the FDA’s arguments in Brovm & Williamson was that the agency was “free to change its position” as long as it provided a reasoned justification for the change. Id. at *15 (emphasis added). And that would likely have been true — but for the Court’s conclusion that Congress had ratified what the Court understood as the FDA’s invariable exclusion of tobacco products made without claims of therapeutic effect.
*898 The FDA has also offered a consequentialist argument, namely, that understanding Brown & Williamson in this fashion leaves the FDA severely thwarted in any effort to nudge e-cigarettes toward relatively healthful forms (or at least away from relatively unhealthful ones). Whether such a consequentialist argument should play any role in our interpretation of Brown & Williamson is questionable, but no matter. In fact the Tobacco Act gives the FDA broad regulatory authority over tobacco products, including, for instance, authority to impose restrictions on their sale, and on the advertising and promotion of such products, see 21 U.S.C. § 387f(d), to regulate the mode of manufacture of tobacco products, see id. § 387f(e), and to establish standards for tobacco products, see id. § 387g. To the extent that Congress believed Brown & Williamson left an insufficiently regulative environment for cigarettes, smokeless tobacco, cigars, and other tobacco products, it found the Tobacco Act an adequate remedy.
Together, Brown & Williamson and the Tobacco Act establish that the FDA cannot regulate customarily marketed tobacco products under the FDCA’s drug/device provisions, that it can regulate tobacco products marketed for therapeutic purposes under those provisions, and that it can regulate customarily marketed tobacco products under the Tobacco Act.
As to NJOY’s likelihood of success on the merits, the firm claims that its electronic cigarettes use a liquid nicotine mixture derived from tobacco and that its products are not marketed for therapeutic uses, NJOY Compl. at 5; Decl. of John Leadbeater at 2; the FDA appears not to challenge either claim. Still, the district court noted that the factual record on NJOY is meager and that the FDA may establish that NJOY does in fact make therapeutic claims regarding its electronic cigarettes. Mem. Op. at 25 n. 17. Until such time, the definitional line laid down in Brown & Williamson (as we understand it) leaves the FDA without jurisdiction over these products under the FDCA’s drug/device provisions. On the merits, then, NJOY is likely to succeed.
We also find that the district court did not abuse its discretion in finding that the balance of harms tips toward NJOY. In showing irreparable harm, the injury to the party must “be both certain and great; it must be actual and not theoretical.” Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.Cir.1985). The FDA’s refusal to admit NJOY’s products into the United States obviously destroyed the firm’s ability in the United States to cover its costs for purchase or production of e-cigarettes. The district court’s finding that this loss would be irreparable absent an injunction appears entirely reasonable. Mem. Op. at 29. Regarding harm to third parties and to the public interest, the district court observed that the FDA had cited no evidence to show that electronic cigarettes harmed anyone. Id. at 30. More significantly, the court rightly found that the FDA has authority under the Tobacco Act to regulate electronic cigarettes, enabling it to mitigate or perhaps extinguish any harm to public health. Id. at 31. Given the likelihood of NJOY’s success on the merits, the irreparable harm to NJOY’s business, and the FDA’s unquestioned Tobacco Act authority to mitigate any public harm, the district court did not abuse its discretion in granting the preliminary injunction.
As we have already noted, the FDA has authority to regulate customarily marketed tobacco products — including e-cigarettes — under the Tobacco Act. It has authority to regulate therapeutically mar *899 keted tobacco products under the FDCA’s drug/device provisions. And, as this decision is limited to tobacco products, it does not affect the FDA’s ability to regulate other products under the “structure or any function” prong defining drugs and devices in 21 U.S.C. § 321(g) and (h), as to the scope of which — tobacco products aside— we express no opinion. Of course, in the event that Congress prefers that the FDA regulate e-cigarettes under the FDCA’s drug/device provisions, it can always so decree.
The judgment of the district court is

Affirmed.