Mr. Gary E. Rebenstorf Director of Law and City Attorney City Hall 455 North Main, 13th Floor Wichita, Kansas 67202
Dear Mr. Rebenstorf:
You inquire whether a patron using an electronic cigarette inside a public building is "smoking" within the meaning of the Kansas Indoor Clean Air Act[1] ("the Act"). The Act provides:
No person shall smoke in an enclosed area or at a public meeting including, but not limited to:
 (1) Public places;
 (2) taxicabs and limousines;
 (3) restrooms, lobbies, hallways and other common areas in public and private buildings, condominiums and other multiple-residential facilities;
 (4) restrooms, lobbies and other common areas in hotels and motels and in at least 80% of the sleeping quarters within a hotel or motel that may be rented to guests;
 (5) access points of all buildings and facilities not exempted pursuant to subsection (d); and
 (6) any place of employment.[2]
The penalties for violation of the Act range from a fine of $100 for a first violation to a fine of $500 for the third or subsequent violation within one year.[3]
Electronic cigarettes ("e-cigarettes") are electronic devices that resemble regular cigarettes, but produce "smoke" by vaporizing a liquid nicotine solution.[4] E-cigarettes contain a heating element that is triggered by the user inhaling, and the heat vaporizes the nicotine solution. E-cigarettes do not contain actual tobacco leaf, do not emit vapor unless the user is inhaling, and do not require ignition by a lighter or match.[5]
In Sottera, Inc. v. FDA, the United States Court of Appeals for the District of Columbia Circuit upheld a lower court's decision that the Food and Drug Administration (FDA) is authorized to regulate e-cigarettes in the same fashion as it regulates ordinary tobacco products.[6] The court based its decision on the federal Tobacco Act, [7] which defines "tobacco product" to include any product "derived from tobacco."[8] Under this broad definition, products that contain nicotine but not actual tobacco leaf, such as e-cigarettes, would nonetheless be classified as tobacco products because nicotine isderived from tobacco. The concurring opinion in this case noted that absent the Tobacco Act's broad definition, e-cigarettes would not be considered tobacco products.[9] The statutory definition, coupled with an absence of congressional intent to define tobacco as a drug, led the appellate court to affirm the lower court's holding that e-cigarettes are within the definition of "tobacco products" under the Tobacco Act.[10]
Although the holding in Sottera is based upon a federal statute that is not relevant to your inquiry, the court's methodology is nonetheless instructive to our analysis. First, we note that the Kansas Indoor Clean Air Act is intended to improve the health of Kansans by reducing their exposure to chemicals in second-hand smoke.[11] The legislative record of the Act does not suggest any contrary intent. Whether e-cigarettes emit chemicals similar to those of regular tobacco cigarettes is a question of fact that we do not address. However, if e-cigarettes do emit such chemicals, then banning the emission of such chemicals inside a public building would be consistent with the intent of the Act.
Second, we turn to Kansas statutes to determine whether an individual using an e-cigarette in a public building is "smoking" within meaning of the Act. As noted above, the Act prohibits smoking at a public meeting or within enclosed spaces. "Smoking" is defined by the Act as "possession of a lighted cigarette, cigar, pipe or burning tobacco inany other form or device designed for the use of tobacco."[12]
Thus, if an e-cigarette is a "lighted cigarette, cigar, pipe or burning tobacco in any other form or device," then the possession of an e-cigarette inside a public building would be a violation of the Act.
As noted above, the Sottera court held that e-cigarettes can be regulated as tobacco products because of the broad federal definition of "tobacco products," which included any product "derived from tobacco." We note that the Act does not define "cigarette," and Kansas law offers no broadly-applicable definition of tobacco products. The term "cigarette" is defined in other Kansas statutes pertaining to fire safety standards, consumer protection and taxation, but those definitions are expressly limited to application within their respective acts.[13] Absent a definition within the Act, we presume that the legislature used the words in their ordinary and common meaning.[14]
To determine the ordinary and common meaning of "cigarette," we turn to the Merriam-Webster Dictionary, which defines the term as follows: "a slender roll of cut tobacco enclosed in paper and meant to be smoked."[15]
E-cigarettes do not contain cut tobacco, and are not enclosed in paper. Thus, e-cigarettes do not fall within the ordinary and common definition of "cigarette." Furthermore, "smoking" as defined by the Act requires possession of a "lighted" cigarette or "burning tobacco."[16]
"Lighted" is an adjective derived from the verb "light," which the Merriam-Webster Dictionary defines as "to take fire; to ignite something (as a cigarette)."[17] E-cigarettes use a heating element to heat nicotine liquid, but they are not ignited by flame and do not burn tobacco.[18] Thus, an e-cigarette in use is not a "lighted cigarette" or a form of "burning tobacco" based upon the ordinary and common meanings of those terms.
In conclusion, it is possible that e-cigarettes emit the same types of chemicals the Kansas Legislature intended to ban from indoor areas open to the public through enactment of the Kansas Indoor Clean Air Act. This is a question of fact that we do not address. Even if e-cigarettes emit such chemicals, the Act does not define "cigarettes" in a manner that would include e-cigarettes within the statutory ban, and the common meaning of "cigarettes" does not include e-cigarettes.
In our opinion, the Kansas Indoor Clean Air Act does not apply to e-cigarettes because the Act fails to define "cigarette," and based upon the ordinary and common definition of the word, an e-cigarette would not be considered a "cigarette" subject to the Act. The Act does define "smoking," but the definition does not include a product that is not a traditional cigarette and does not burn tobacco. If the Kansas Legislature wishes to extend the Act to cover e-cigarettes, it may amend the Act to define "cigarette" to include e-cigarettes, or it may amend the definition of "smoking" to include the use of e-cigarettes.
Sincerely,
 Derek Schmidt Attorney General
 Sarah Fertig Assistant Attorney General
 Lisa Mendoza Assistant Attorney General
DS:AA:SF:LM:ke
[1] K.S.A. 2010 Supp. 21-4009 et seq.
[2] K.S.A. 2010 Supp. 21-4010(a), as amended by L. 2011, Ch. 114, Sec. 98. This statute was amended during the 2011 legislative session to add an exception for charity cigar dinners, but the amendments are irrelevant to our analysis.
[3] K.S.A. 2010 Supp. 21-4012(d).
[4] http://www.njoy.com/pages/FAQs.html, accessed on October 21, 2011.
[5] Id.
[6] 627 F.3d 891 (D.C. Cir. 2010), aff'g Smoking Everywhere,Inc. v. FDA, 680 F. Supp. 2d 62 (D.D.C. 2010).
[7] Pub.L. 111-31, 123 Stat. 1776 (2009).
[8] 21 U.S.C. § 321(rr)(1).
[9] 627 F.3d at 899 (Garland, J., concurring).
[10] Id. at 898-899.
[11] See, e.g., Minutes, House Health and Human Services Committee, March 10 and 12, 2009.
[12] K.S.A. 2010 Supp. 4009(o) (emphasis added).
[13] K.S.A. 2010 Supp. 31-602(b); K.S.A. 50-6a02(d); K.S.A. 2010 Supp. 79-3301(c).
[14] Rogers v. Shanahan, 221 Kan. 221, 223-24 (1976).
[15] http://www.merriam-webster.com/dictionary/cigarette, accessed on October 21, 2011 (emphasis added).
[16] K.S.A. 2010 Supp. 4009(o).
[17] http://www.merriam-webster.com/dictionary/lighted, accessed on October 21, 2011.
[18] http://www.njoy.com/pages/FAQs.html, accessed on October 21, 2011. *Page 1